UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

KEELE PARK,

    Plaintiff,

        v.

INOVIO PHARMACEUTICALS, INC. et al.,

    Defendants.

Civil Action No. 15-3517 (SRC)

**OPINION & ORDER**

---

**CHESLER**, **U.S.D.J.**

    This matter comes before the Court on the motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56, by Defendants Inovio Pharmaceuticals, Inc. ("Inovio") and J. Joseph Kim (collectively, "Defendants"). For the reasons stated below, the motion will be granted in part and denied in part.

    This case arises from a dispute over the exercise of two grants of stock options to Plaintiff. The Amended Complaint alleges that Plaintiff received two option grants from VGX, a corporate predecessor to Defendant Inovio: 1) the 2005 option grant (the "2005 Grant"); and 2) the 2006 option grant (the "2006 Grant"). A previous decision dismissed the claims relating to the 2005 Grant; the Amended Complaint asserts three claims which have survived: 1) breach of contract; 2) breach of the implied covenant of good faith and fair dealing; and 3) unjust enrichment. Defendants have moved for summary judgment on all remaining claims.

    As to the breach of contract claim, Defendants contend that Plaintiff Keele Park ("Park") cannot prove any breach, since the 2006 Grant required that Park provide services continuously to

Inovio until at least 90 days prior to September 13, 2013, the date Park attempted to exercise the options; Defendants assert that Park has no evidence of sufficient qualifying service. In opposition, Park argues that the term "services" in the 2006 Grant is ambiguous, that the Court needs to examine extrinsic evidence to resolve the ambiguity, and that the evidence raises a factual dispute over the meaning of the term.

The 2006 Grant itself does not contain a provision requiring service to exercise the option. It states that the option "shall become exercisable on the following dates, if the Grantee is employed by, or providing service to, the Company . . ."[1] (Valen Cert. Ex. F at P0000654.) The 2006 Grant incorporates by reference the 2001 Equity Compensation Plan (the "2001 Plan"), and states that the agreement is governed by the law of Pennsylvania. The 2001 Plan states: "an Option may only be exercised while the Grantee is employed by, or providing service to, the Company as an Employee, Key Advisor or member of the Board." (Valen Cert. Ex. G at INOVIO00077, § 5(f)(i).) The 2001 Plan also states:

> (v) For purposes of this Section 5(f) and Section 6:
> . . .
> (2) "Employed by, or provide service to, the Company" shall mean employment or service as an Employee, Key Advisor or member of the Board (so that, for purposes of exercising Options and satisfying conditions with respect to Stock Awards, a Grantee shall not be considered to have terminated employment or service until the Grantee ceases to be an Employee, Key Advisor and member of the Board, unless the Committee determines otherwise.

(Id. at INOVIO00078, § 5(f).) The 2001 Plan also provides:

> 4. <u>Eligibility for Participation</u>

---

[1] This provision defines the date on which the option first became exercisable, which differs from the conditions required to exercise the option.

> (a) Eligible Persons. . . Consultants and advisors who perform services for the Company or any of its subsidiaries ("Key Advisors") shall be eligible to participate in the Plan if the Key Advisors render bona fide services to the Company or its subsidiaries, the services are not in connection with the offer and sale of securities in a capital-raising transaction and the Key Advisors do not directly or indirectly promote or maintain a market for the Company's securities.

(Id. at INOVIO00076, § 4(a).) The 2001 Plan states that the agreement is governed by the law of Delaware. (Id. at INOVIO00087, § 19(d).)

The Court first inquires whether there is a conflict of laws issue, since one agreement states that it is governed by the law of Delaware, while the other agreement states that it is governed by the law of Pennsylvania. Defendants state that there is no conflict of laws and that the two states' legal principles relevant to the breach of contract claim do not differ. (Defs.' Br. 7 n.3.) Plaintiff states that Delaware and Pennsylvania law require the same elements for a breach of contract claim (Pl.'s Opp. 8), but makes no broader statement about choice of law in this dispute; the opposition brief cites both Delaware and Pennsylvania cases in its legal analysis. Because neither party has posited the existence of a conflict of laws, this Court will treat the two states' laws as equal in applicability to the present dispute over the breach of contract claim.

In moving for summary judgment on the breach of contract claim, Defendants argue principally: 1) there is a single reasonable interpretation of the 2006 Grant and 2001 Plan; 2) applying that interpretation, Plaintiff cannot show that he satisfied the requirements to exercise the options; and 3) therefore, Plaintiff cannot prove breach of contract. In opposition, Plaintiff argues that: 1) there is more than one reasonable interpretation of the 2006 Grant and 2001 Plan, and that the Court must consider evidence extrinsic to the agreements to interpret the contractual language; 2) Plaintiff has evidence to support an alternative interpretation as well as evidence that he

satisfied the requirements to exercise the options; and 3) therefore, he has raised factual disputes that preclude a grant of summary judgment.

The Court will consider these arguments in detail in the discussion that follows, but first will state the most straightforward rationale for the decision to deny Defendants' motion, as to the breach of contract claim. Defendants have moved for summary judgment on a claim for which they do not bear the burden of proof at trial. As the movant not bearing the burden of proof at trial, Defendants satisfy their initial summary judgment burden by pointing to the absence of evidence to support Plaintiff's case.[2] Having done so, the burden shifts to Plaintiff to point to evidence that raises a material factual dispute.[3] Plaintiff has proposed an alternative interpretation of the contractual language that requires examination of extrinsic evidence of meaning. Under Delaware law, this raises a factual dispute sufficient to preclude a grant of summary judgment. GMG Capital Invs., LLC v. Athenian Venture Partners I, L.P., 36 A.3d 776, 783 (Del. 2012).

Having stated the basic rationale for today's decision on the breach of contract claim, the Court will consider the parties' arguments in more detail. Defendants state this summary of their

---

[2] "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

[3] "When determining whether there are any genuine issues of material fact, we draw all inferences in favor of the non-moving party. Although the non-moving party receives the benefit of all factual inferences in the court's consideration of a motion for summary judgment, the non-moving party must point to some evidence in the record that creates a genuine issue of material fact. In this respect, summary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument. In addition, if the non-moving party has the burden of proof at trial, that party must set forth facts sufficient to establish the existence of an element essential to that party's case." Berckeley Inv. Group, Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006) (citations omitted).

position:

> The only reasonable interpretation of the Grant is that Park's stock option only could have remained valid until September 13, 2013 (when he first tried to exercise it) if he had continuously provided services to VGX and/or Inovio from June 28, 2006 (the date of the Grant) until at least June 15, 2013 (90 days before September 13, 2013). There is no genuine issue of material fact but that Park ceased providing services to VGX in 2006, long before the option even vested, and, in any event, years before June 15, 2013. As such, Park had no contractual entitlement to exercise the option, Defendants committed no breach, and the Court should grant summary judgment in Defendants' favor.

(Defs.' Br. 6-7.) The Court will consider this argument piece by piece.

The first piece is the proposition that there is only one reasonable interpretation of the relevant contractual language. The first questions this Court asks are: what precisely is the contractual language at issue, and what is the one reasonable interpretation of that language? These questions are not clearly answered in Defendants' brief. It seems that Defendants' argument hinges on the termination provision in the 2001 Plan:

> In the event that a Grantee ceases to be employed by, or provide service to, the Company for any reason other than Disability, death, or termination for cause . . . any Option which is otherwise exercisable by the Grantee shall terminate unless exercised within 90 days after the date on which the Grantee ceases to be employed by, or provide service to, the Company . . .

(Valen Cert. Ex. G at INOVIO00077, § 5(f)(i).) Defendants' brief offers no analysis of the language of this provision. Defendants assert that there is only one reasonable interpretation, but do not explain which words have been interpreted to give them what meaning and why. Defendants' brief skips the interpretation step and jumps to the assertion that "to rule upon this motion the Court must decide if there is a genuine issue of fact as to whether Park performed continuous services for VGX or Inovio from June 28, 2006 until at least June 15, 2013 (90 days before Park first attempted to exercise the option)." (Defs.' Br. 12.)

5

This proposed formulation of the framework for the decision is problematic, for several reasons. First, where did "continuous" come from? That word does not appear in the termination provision, and Defendants have not offered any foundation for their assertion that the Court should interpret the contracts to require continuous anything.[4] Second, what is the proposed one reasonable interpretation of "services?" Defendants offer ten pages of argument in which they attempt to show that nothing that Plaintiff has said he did falls within the scope of "services" – without ever proposing a definition that would clarify the bounds of their interpretation of "services."

Furthermore, while Defendants assert that they have offered the single reasonable interpretation of the agreements, the Court is puzzled by the claim that their interpretation is reasonable. If Defendants' interpretation of the agreements is correct, the 2006 Grant makes little or no sense. Defendants propose that, at the meeting in which VGX terminated the employment relationship with Plaintiff, VGX entered into an agreement with Park that, in short, would reward him with stock options in return for continuous service to VGX. (See Defs.' Rule 56.1 Stmt. ¶ 12.) The 2006 Grant, however, does not appear to say what that service is or give any time parameters for performance other than a vesting date. Defendants' proffered explanations do not illuminate this mystery. Defendants state, as if explaining: "Despite Park's termination, the parties left open the possibility that Park might continue to provide consulting services to the company, and VGX

---

[4] The Court has the same question about Defendants' occasional reference to a requirement for "bona fide services." (See, e.g., Defs.' Br. 14.) Defendants have not laid a foundation for this. The termination provision does not refer to "bona fide" anything. "Bona fide services" does appear in the 2001 Plan provision defining what persons are eligible to participate in the Plan. (2001 Plan § 4(a).) Is it Defendants' position that VGX gave the 2006 Grant to someone who was not eligible to receive it?

therefore offered Park the Grant." (Defs.' Br. 4.) This statement does not help the Court understand the purpose of the 2006 Grant, and the Court remains unpersuaded that Defendants have offered a reasonable interpretation of the agreements, much less the only reasonable explanation.

Defendants have not proposed a specific interpretation of specific contractual language that persuades the Court that there is but one reasonable interpretation, as Defendants argue. The Court notes that this task may have an additional complication. As already noted, the 2001 Plan also states: "a Grantee shall not be considered to have terminated employment or service until the Grantee ceases to be an Employee, Key Advisor and member of the Board . . ." (Id. at INOVIO00078, § 5(f)(v)(2).) The Court observes that there is a subtle difference between this provision and the language in the termination provision. Section 5(f)(i) states that the option terminates unless exercised within 90 days after the date on which the Grantee ceases to provide service to the Company. Section 5(f)(v)(2) states that a Grantee shall *not* be considered to have terminated service until he/she "ceases to be," in this case, a Key Advisor. The Court wonders what § 5(f)(v)(2) was intended to mean and what it adds to the termination provision. "Delaware courts have consistently held that an interpretation that gives effect to each term of an agreement is preferable to any interpretation that would result in a conclusion that some terms are uselessly repetitive." O'Brien v. Progressive N. Ins. Co., 785 A.2d 281, 287 (Del. 2001). Do the parties contend that § 5(f)(v)(2) is uselessly repetitive? If not, what was intended by this provision and its "ceases to be" language?

The key point is that Defendants have failed to persuade this Court that there is but one reasonable interpretation of the agreements, or that they have said what that one interpretation is.

7

In opposition, in short, Plaintiff contends that the meaning of the contractual term "services" is ambiguous. The Court notes that Plaintiff does not offer a specific definition of the term either.[5] Thus, while neither side has proposed a complete and persuasive interpretation of the meaning of "services," they have jointly persuaded the Court that the meaning of that term, or other key terms, is likely to be ambiguous, and that consideration of extrinsic evidence may be needed to understand what meaning the parties intended. Plaintiff has submitted the Shin Declaration, which does offer a way of understanding the scope of "services" which, if credited, would support the inference that Park met the contractual requirements to exercise the 2006 Grant when he attempted to do so. This suffices to raise a material factual dispute over the interpretation of the relevant contractual language under Delaware law.

This Court concludes that, as to the breach of contract claim, Defendants' motion for summary judgment must be denied because Defendants have failed to demonstrate that they are entitled to judgment as a matter of law. In large part, the parties have not yet gotten all the issues into focus. But even if the Court were to find that the present briefing has sufficient analysis to arrive at a decision – and thus were it to agree that the decision turns on interpretation of the contractual term "services" –, it would deny the motion for summary judgment on the ground that Plaintiff has raised a material factual dispute. The reasoning, in brief, is as follows. Under Delaware law, "a contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings." Northwestern Nat'l Ins. Co. v. Esmark, Inc., 672 A.2d 41, 43 (Del. 1996). The parties have each

---

[5] Each side contends it has a particular interpretation of the contractual terms in mind, but neither side makes a clear proposal that states which terms have what meaning. This would seem to support the inference that there are ambiguities in meaning that require interpretation.

proposed a plausible theory of the meaning of "services," and so the term is ambiguous. The Supreme Court of Delaware has held:

> This Court has long upheld awards of summary judgment in contract disputes where the language at issue is clear and unambiguous. In such cases, the parol evidence rule bars the admission of evidence from outside the contract's four corners to vary or contradict that unambiguous language. But, where reasonable minds could differ as to the contract's meaning, a factual dispute results and the fact-finder must consider admissible extrinsic evidence. In those cases, summary judgment is improper.

GMG Capital, 36 A.3d at 783. Plaintiff's offer of the Shin Certification is thus admissible as extrinsic evidence bearing on the meaning of "services."

As to the claim for breach of contract, Plaintiff has succeeding in raising a factual dispute sufficient to defeat Defendants' motion for summary judgment. In the alternative, Defendants have failed to persuade this Court that they are entitled to judgment as a matter of law on the breach of contract claim. As to the claim for breach of contract, the motion for summary judgment will be denied without prejudice.

Furthermore, Plaintiff has raised the argument that, in the alternative, the Court should resolve the interpretive problems by applying the doctrine of *contra proferentem* and construing the ambiguous contractual language against the drafter. "The doctrine of *contra proferentem* is well established in Delaware contract law. When one side of a contract was unilaterally responsible for the drafting, courts apply *contra proferentem* and construe ambiguous terms against the drafter." Aleynikov v. Goldman Sachs Group, Inc., 765 F.3d 350, 366 (3d Cir. 2014). Because Plaintiff has not moved for summary judgment, the Court need not reach this issue at this time.

As to the motion for judgment on the unjust enrichment claim, Defendants first argue that

the existence of a valid contract precludes an unjust enrichment claim. Federal Rule of Civil Procedure 8(d)(2) allows Plaintiff to plead in the alternative. Defendants next argue that Plaintiff has no evidence that he conferred a benefit on Defendants after termination of his employment. The Shin Certification constitutes evidence that Plaintiff conferred a benefit on Defendants and is sufficient to defeat the motion for summary judgment on this claim.

As to the motion for judgment on the claim of breach of the implied covenant of good faith and fair dealing, Defendants argue that Plaintiff has no evidence of bad faith. In opposition, Plaintiff offers only a general discussion of the relevant law. The guidance of the Third Circuit, quoted above, bears repeating here:

> [S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument. In addition, if the non-moving party has the burden of proof at trial, that party must set forth facts sufficient to establish the existence of an element essential to that party's case.

Berckeley, 455 F.3d at 201 (citations omitted). Defendants challenged Plaintiff to rebut the motion with facts in the record, but Plaintiff responded without facts. The brief does not point to relevant evidence of record; Plaintiff's Rule 56.1 statement does not point to relevant evidence of record, as to this claim. Plaintiff has offered nothing to rebut Defendants' contention that Plaintiff has no evidence to win his case on this claim. As to the claim of breach of the implied covenant of good faith and fair dealing, Defendants have shown that they are entitled to judgment as a matter of law, and the motion for summary judgment on this claim will be granted.

Next, Defendants move for summary judgment on all claims on the ground that the statute of limitations has run. Defendants contend that any breach occurred "in late 2006, when 90 days passed without Park providing services to the company." (Defs.' Br. 28.) In opposition, Plaintiff

points to the evidence of record supporting his claim that the claim for breach accrued when he attempted to exercise the options in 2013 and was denied. Before this Court can rule on a statute of limitations argument, it must first resolve the underlying issues of how to interpret the contract, whether any breach occurred, and then when it occurred. As stated above, factual disputes preclude resolution of these questions at this juncture.

Lastly, Defendants move for summary judgment on the claims against Defendant Joseph Kim on the ground that, under Delaware law, a plaintiff cannot pursue a corporate officer for actions taken on behalf of the corporation. Plaintiff did not oppose this aspect of the motion, and the Court construes Plaintiff's silence as a concession that Defendants are correct. As to the claims against Joseph Kim, the motion for summary judgment will be granted.

In the end, as to the breach of contract claim, the briefs on this motion have raised many more questions than they have answered. In particular, the Court wonders what the parties intended when they agreed to the 2006 Grant. It is undisputed that the parties made the agreement either when VGX terminated Plaintiff's employment, or shortly after. Defendants contend that the 2006 Grant neither guaranteed that VGX would ask Plaintiff for his services, nor did it seek to have Plaintiff "remain 'on call' for a decade." (Defs.' Br. 11.) So, then, why was it done? What were the parties intending? What did VGX expect in return for the grant of the options? Why would a company make a contingent grant of stock options to an ex-employee with no clear plan to use his future services?

These are not merely academic questions. Defendants argue that they win the case because the 2006 Grant required Plaintiff to perform continuous services, and there is no evidence that he provided them. An explanation of what the parties wanted the 2006 Grant to accomplish could
11

shed light on what services they had in mind at the time.

For these reasons,

**IT IS** on this 28th day of September, 2017,

**ORDERED** that Defendants' motion for summary judgment (Docket Entry No. 51) is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that, as to the claim for breach of the implied covenant of good faith and fair dealing, the motion for summary judgment is **GRANTED**, and Judgment on the claim for breach of the implied covenant of good faith and fair dealing is hereby entered in Defendants' favor; and is further

**ORDERED** that, as to all claims against Defendant Joseph Kim, the motion for summary judgment is **GRANTED**, and Judgment on all claims against Joseph Kim is hereby entered in Defendants' favor; and is further

**ORDERED** that, as to all other claims, the motion for summary judgment is **DENIED** without prejudice.

                                                                s/ Stanley R. Chesler
                                                                Stanley R. Chesler, U.S.D.J.